ncf1      ORIGINAL      Fisher And Fisher
File # 50619



DOCKETED MAY 29 2002

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

02C 3805

| | |
|---|---|
| Chase Manhattan Mortgage Corporation <br>     Plaintiff <br> VS. <br> James Carroll a/k/a James H. Carroll, Lillian M. Carroll and GMAC Mortgage Corporation D/B/A Ditech.com <br>     Defendant | ) <br> ) <br> ) <br> ) NO. JUDGE LINDBERG <br> ) MAGISTRATE JUDGE NOLAN <br> ) <br> ) |

This is an attempt to collect a debt and any information obtained will be used for that purpose.

## COMPLAINT FOR FORECLOSURE

Now comes the Plaintiff, by its attorneys, FISHER AND FISHER, ATTORNEYS AT LAW, P.C., and, pursuant to Illinois Compiled Statutes, Chapter 735, Section 15, 15-1101 et seq., alleges the following:

1. Jurisdiction of this court is based upon diversity of citizenship. Plaintiff is a corporation incorporated under the laws of the STATE OF NEW JERSEY, having its principal place of business in the STATE OF OHIO. Defendant mortgagors are citizens of the STATE OF ILLINOIS. This matter in controversy, exclusive of interest and costs, exceeds the sum of $75,000.00.

2. Plaintiff files this complaint to foreclose the mortgage hereinafter described, and joins the following persons as defendants:

James Carroll a/k/a James H. Carroll, an Illinois citizen - Lillian M. Carroll, an Illinois citizen - GMAC Mortgage Corporation DBA Ditech.com, Incorporated in the State of Pennsylvania with its Principal Place of Business in Illinois.

3. Attached as Exhibit "A" is a copy of the note, as Exhibit "B" is a copy of the mortgage and as Exhibit "C" is a copy of the assignment(s) secured thereby.

4. Information concerning mortgage:

(A) Nature of instrument: Mortgage

1-1

(B) Date of Mortgage: December 8, 1999

(C) Name of Mortgagor: James Carroll a/k/a James H. Carroll

(D) Name of Mortgagee: JC Marshall Financial SVCS, Inc.

(E) Date and place of recording: December 10, 1999, Will County Recorder of Deeds Office

(F) Identification of recording: R1999150862

(G) Interest subject to the mortgage: Fee Simple

(H) Amount of original indebtedness including subsequent advances made under the mortgage: $107,100.00

(I) Legal description and the common address:
Lot 11, in Unit 1, Shorewood Park, being a Subdivision of that part of the Northeast 1/4 of Section 16, lying Easterly of the Certificate of the DuPage River and Southerly of the Southerly line of Shorewood Beach Subdivision, all in Township 35 North and in Range 9, East of the Third Principal Meridian, according to the Plat Thereof Recorded September 1, 1959 as Document No. 885106, in Will County, Illinois.
C/k/a 721 Cottage Street, Shorewood, IL 60431
Tax ID 06-16-219-022

(J) Statement as to default now due:

1. Date of default: 12/01.

2. Unpaid principal balance: $105,483.85.

3. Per diem interest accruing: $23.84.

(K) Name of present owners of the real estate:
James Carroll a/k/a James H. Carroll

(L) Names of other persons who are joined as defendants and whose interest in or lien on the mortgaged real estate is sought to be terminated:

- Lillian M. Carroll as Reputed Spouse to James Carroll a/k/a James H. Carroll - GMAC Mortgage Corporation D/B/A Ditech.com by reason of Mortgage dated May 9, 2000 and Recorded May 23, 2000 as Document Number R2000054263 made by James Carroll a/k/a James H. Carroll in the amount of $24,500.00.

(M) The following defendants, except those who have received a discharge of this debt in any chapter under the United States Bankruptcy Code, may be held personally liable for the deficiency, if any:
James Carroll a/k/a James H. Carroll

(N) Capacity in which plaintiff brings this foreclosure: Plaintiff is the owner and legal holder of said note, mortgage and indebtedness.

(O) Facts in support of request for attorneys' fees and of costs and expenses.

Plaintiff has been required to retain counsel for litigation of this foreclosure and to incur substantial attorney fees, court costs, title insurance or abstract costs and other expenses which should be added to the balance secured by said mortgage, and which are a lien upon said real estate being foreclosed, as provided in said mortgage.

5. Pursuant to the Fair Debt Collection Practices Act, 15 U.S.C. 1692 et seq. (1977), Defendant(s) may dispute the validity of the debt or any portion thereof. If Defendant(s) do so in writing within thirty (30) days of receipt of this pleading, Counsel for Plaintiff will obtain and provide Defendant(s) with written verification thereof; otherwise, the debt will be assumed to be valid. Likewise, if requested within thirty days (30) days of receipt of this pleading, Counsel for Plaintiff will send Defendant(s) the name and address of the original creditor if different from above.

## REQUEST FOR RELIEF

Plaintiff requests:

(i) A judgment to foreclose such mortgage providing for a sale by public auction

(ii) An order granting a shortened redemption period, if authorized by law.

(iii) A personal judgment for a deficiency, if authorized by law.

(iv) An order granting possession.

(v) An order placing the mortgagee in possession or appointing a receiver if and when sought.

(vi) A judgment for attorneys' fees, costs and expenses including but not limited to payments for taxes, insurance, securing, inspections and other expenses of the plaintiff.

(vii) Enforcement of its assignment of rents derived from said real estate.

(viii)  Such other relief as equity may require, including, but not limited to, declaratory and injunctive relief.

<div style="text-align: right;">
Plaintiff
Chase Manhattan Mortgage Corporation

By: _____
One of Plaintiff's Attorneys
</div>

**Elizabeth Kaplan Meyers, Renee Meltzer Kalman**
**Michael S. Fisher, Kenneth J. Johnson, Erik E. Blumberg,**
**Marc D. Engel, Ryan Krueger, Thomas J. Donahue, Alycia A. Fitz**
**Attorneys for Plaintiff**
**FISHER AND FISHER**
**ATTORNEYS AT LAW, P.C.**
**120 North LaSalle Street, Suite 2520**
**Chicago, IL  60602**
**(773) 854-8055**
**ARDC# 816108**

**EXHIBIT A**

# NOTE

**NOTICE: THIS LOAN IS NOT ASSUMABLE WITHOUT THE APPROVAL OF THE DEPARTMENT OF VETERANS AFFAIRS OR ITS AUTHORIZED AGENT.**

Loan #: 0020211967
28-28-6-0699062

December 8th, 1999   JOLIET   ILLINOIS
[Date]   [City]   [State]

721 COTTAGE ST, SHOREWOOD, ILLINOIS  60431
[Property Address]

### 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 107,100.00 (this amount is called "principal"), plus interest, to the order of the Lender. The Lender is JC MARSHALL FINANCIAL SVCS INC

. I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

### 2. INTEREST

Interest will be charged on unpaid principal until the full amount of principal has been paid. I will pay interest at a yearly rate of 8.250 %.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

### 3. PAYMENTS

**(A) Time and Place of Payments**

I will pay principal and interest by making payments every month.

I will make my monthly payments on the 1st day of each month beginning on February 1st 2000. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. My monthly payments will be applied to interest before principal. If, on January 1st, 2030, I still owe amounts under this Note, I will pay those amounts in full on that date which is called the "Maturity Date."

I will make my monthly payments at 7601 W 191ST STREET, 2ND FLOOR, TINLEY PARK, IL 60477 or at a different place if required by the Note Holder.

**(B) Amount of Monthly Payments**

My monthly payment will be in the amount of U.S. $ 804.61 .

### 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of principal at any time before they are due. A payment of principal only is known as a "prepayment." When I make a prepayment, I will tell the Note Holder in writing that I am doing so.

I may make a full prepayment or partial prepayments without paying any prepayment charge. The Note Holder will use all of my prepayments to reduce the amount of principal that I owe under this Note. If I make a partial prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

### 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (i) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (ii) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the principal I owe under this Note or by making a direct payment to me. If a refund reduces principal, the reduction will be treated as a partial prepayment.

### 6. BORROWER'S FAILURE TO PAY AS REQUIRED

**(A) Late Charge for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of 15 calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 4.000 % of my overdue payment. I will pay this late charge promptly but only once on each late payment.

**(B) Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

---

**MULTISTATE FIXED RATE NOTE** - Single Family - Fannie Mae/Freddie Mac Uniform Instrument

Form 3200 12/83
Amended 4/92


VMP -5V (9204)
VMP MORTGAGE FORMS - (313)293-8100 - (800)521-7291
Page 1 of 2   Initials: _____



**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is delivered or mailed to me.

**(D) No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

**7. GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**8. OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**9. WAIVERS**

I and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**10. ALLONGE TO THIS NOTE**

If an allonge providing for payment adjustments or for any other supplemental information is executed by the Borrower together with this Note, the covenants of the allonge shall be incorporated into and shall amend and supplement the covenants of this Note as if the allonge were a part of this Note. [Check applicable box]

☐ Graduated Payment Allonge    ☐ Other [Specify]    ☒ Other [Specify]

Assumption Policy Allonge

**11. UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

Regulations (38 C.F.R. Part 36) issued under the Department of Veteran's Affairs ("V.A.") Guaranteed Loan Authority (38 U.S.C. Chapter 37) and in effect on the date of loan closing shall govern the rights, duties and liabilities of the parties to this loan and any provisions of this Note which are inconsistent with such regulations are hereby amended and supplemented to conform thereto.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

Without Recourse, Pay to the order of CrossLand Mortgage Corp.

_____ (Seal)  J.C. Marshall Financial Serv. (Seal)
JAMES H. CARROLL                -Borrower                                -Borrower
SSN: 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                         SSN:

_____ (Seal)  _____ (Seal)
                                -Borrower                                -Borrower
SSN:                                     SSN: By: Valerie Mason
                                         it's: Assistant Secretary  [Sign Original Only]

Form 3200 12/83

-5V (9204)                    Page 2 of 2

**EXHIBIT B**

R1999150862

MARY ANN STUKEL
Will County Recorder
Will County

R 99150862     Page 1 of 9
LRK Date 12/10/1999    Time 11:28:48
Recording Fee:     28.00

12-10-1999

Mail To

Prepared by    CROSSLAND MORTGAGE CORP
1420 KENSINGTON RD. SUITE 335
OAKBROOK IL 60523
630-573-0800

FATIC# AW4367

Loan ID: 002021167
Case ID: 28 28-6 0699062

# MORTGAGE

**NOTICE: THIS LOAN IS NOT ASSUMABLE WITHOUT THE APPROVAL OF THE DEPARTMENT OF VETERANS AFFAIRS OR ITS AUTHORIZED AGENT.**

THIS MORTGAGE ("Security Instrument") is given on    December 8th, 1999    . The mortgagor is
JAMES H. CARROLL, MARRIED TO LILLIAN M. CARROLL.

("Borrower"). This Security Instrument is given to
JC MARSHALL FINANCIAL SVCS INC

which is organized and existing under the laws of    "The State of ILLINOIS"    , and whose address is   7601 W 191ST STREET, 2ND FLOOR, TINLEY PARK, IL 60477
("Lender"). Borrower owes Lender the principal sum of
One Hundred Seven Thousand One Hundred and no/100-- ---
Dollars (U.S. $   107,100.00   )
This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which provides for monthly payments, with the full debt, if not paid earlier, due and payable on   January 1st, 2030
This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and all renewals, extensions and modifications of the Note; (b) the payment of all other sums, with interest, advanced under paragraph 7 to protect the security of this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to Lender the following described property located in      WILL      County, Illinois:

SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE PART OF

Item #: 06-16-213-022

which has the address of    721 COTTAGE ST, SHOREWOOD    Street, City,
Illinois    60431    [Zip Code] ("Property Address");

ILLINOIS Single Family FNMA/FHLMC UNIFORM INSTRUMENT Form 3014 9/90
Amended 5/91
-6V(IL) (9602).01
VMP MORTGAGE FORMS - (800)521-7291



R1999150862

LOT 11, IN UNIT ONE, SHOREWOOD PARK, BEING A SUBDIVISION OF THAT PART OF THE NORTHEAST QUARTER OF SECTION 16, LYING EASTERLY OF THE CENTERLINE OF THE DUPAGE RIVER AND SOUTHERLY OF THE SOUTHERLY LINE OF SHOREWOOD BEACH SUBDIVISION, ALL IN TOWNSHIP 35 NORTH AND IN RANGE 9 EAST OF THE THIRD PRINCIPAL MERIDIAN, ACCORDING TO THE PLAT THEREOF RECORDED SEPTEMBER 1, 1959, AS DOCUMENT NO. 885106, IN WILL COUNTY, ILLINOIS.

2

# R1999150862

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. **Payment of Principal and Interest; Prepayment and Late Charges.** Borrower shall promptly pay when due the principal of and interest on the debt evidenced by the Note and any prepayment and late charges due under the Note.

2. **Funds for Taxes and Insurance.** Subject to applicable law or to a written waiver by Lender, Borrower shall pay to Lender on the day monthly payments are due under the Note, until the Note is paid in full, a sum ("Funds") for: (a) yearly taxes and assessments which may attain priority over this Security Instrument as a lien on the Property; (b) yearly leasehold payments or ground rents on the Property, if any; (c) yearly hazard or property insurance premiums; (d) yearly flood insurance premiums, if any; (e) yearly mortgage insurance premiums, if any; and (f) any sums payable by Borrower to Lender, in accordance with the provisions of paragraph 8, in lieu of the payment of mortgage insurance premiums. These items are called "Escrow Items." Lender may, at any time, collect and hold Funds in an amount not to exceed the maximum amount a lender for a federally related mortgage loan may require for Borrower's escrow account under the federal Real Estate Settlement Procedures Act of 1974 as amended from time to time, 12 U.S.C. Section 2601 et seq. ("RESPA"), unless another law that applies to the Funds sets a lesser amount. If so, Lender may, at any time, collect and hold Funds in an amount not to exceed the lesser amount. Lender may estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is such an institution) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items. Lender may not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. However, Lender may require Borrower to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with this loan, unless applicable law provides otherwise. Unless an agreement is made or applicable law requires interest to be paid, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender may agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds, showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for all sums secured by this Security Instrument.

If the Funds held by Lender exceed the amounts permitted to be held by applicable law, Lender shall account to Borrower for the excess Funds in accordance with the requirements of applicable law. If the amount of the Funds held by Lender at any time is not sufficient to pay the Escrow Items when due, Lender may so notify Borrower in writing, and, in such case Borrower shall pay to Lender the amount necessary to make up the deficiency. Borrower shall make up the deficiency in no more than twelve monthly payments, at Lender's sole discretion.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender. If, under paragraph 21, Lender shall acquire or sell the Property, Lender, prior to the acquisition or sale of the Property, shall apply any Funds held by Lender at the time of acquisition or sale as a credit against the sums secured by this Security Instrument.

3. **Application of Payments.** Unless applicable law provides otherwise, all payments received by Lender under paragraphs 1 and 2 shall be applied: first, to any prepayment charges due under the Note; second, to amounts payable under paragraph 2; third, to interest due; fourth, to principal due; and last, to any late charges due under the Note.

4. **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines and impositions attributable to the Property which may attain priority over this Security Instrument, and leasehold payments or ground rents, if any. Borrower shall pay these obligations in the manner provided in paragraph 2, or if not paid in that manner, Borrower shall pay them on time directly to the person owed payment. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this paragraph. If Borrower makes these payments directly, Borrower shall promptly furnish to Lender receipts evidencing the payments.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over

3

R1999150862

this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

5. **Hazard or Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage" and any other hazards, including floods or flooding, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's approval which shall not be unreasonably withheld. If Borrower fails to maintain coverage described above, Lender may, at Lender's option, obtain coverage to protect Lender's rights in the Property in accordance with paragraph 7.

All insurance policies and renewals shall be acceptable to Lender and shall include a standard mortgage clause. Lender shall have the right to hold the policies and renewals. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.

Unless Lender and Borrower otherwise agree in writing, insurance proceeds shall be applied to restoration or repair of the Property damaged, if the restoration or repair is economically feasible and Lender's security is not lessened. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. If Borrower abandons the Property, or does not answer within 30 days a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may collect the insurance proceeds. Lender may use the proceeds to repair or restore the Property or to pay sums secured by this Security Instrument, whether or not then due. The 30-day period will begin when the notice is given.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of the payments. If under paragraph 21 the Property is acquired by Lender, Borrower's right to any insurance policies and proceeds resulting from damage to the Property prior to the acquisition shall pass to Lender to the extent of the sums secured by this Security Instrument immediately prior to the acquisition.

6. **Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate, or commit waste on the Property. Borrower shall be in default if any forfeiture action or proceeding, whether civil or criminal, is begun that in Lender's good faith judgment could result in forfeiture of the Property or otherwise materially impair the lien created by this Security Instrument or Lender's security interest. Borrower may cure such a default and reinstate, as provided in paragraph 18, by causing the action or proceeding to be dismissed with a ruling that, in Lender's good faith determination, precludes forfeiture of the Borrower's interest in the Property or other material impairment of the lien created by this Security Instrument or Lender's security interest. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

7. **Protection of Lender's Rights in the Property.** If Borrower fails to perform the covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture or to enforce laws or regulations), then Lender may do and pay for whatever is necessary to protect the value of the Property and Lender's rights in the Property. Lender's actions may include paying any sums secured by a lien which has priority over this Security Instrument, appearing in court, paying reasonable attorneys' fees and entering on the Property to make repairs. Although Lender may take action under this paragraph 7, Lender does not have to do so.

Any amounts disbursed by Lender under this paragraph 7 shall become additional debt of Borrower secured by this Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

8. **Mortgage Insurance.** If Lender required mortgage insurance as a condition of making the loan secured by this Security Instrument, Borrower shall pay the premiums required to maintain the mortgage insurance in effect. If, for any reason, the mortgage insurance coverage required by Lender lapses or ceases to be in effect, Borrower shall pay the premiums required to

Form 3014  9/90

R1999150862

obtain coverage substantially equivalent to the mortgage insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the mortgage insurance previously in effect, from an alternate mortgage insurer approved by Lender. If substantially equivalent mortgage insurance coverage is not available, Borrower shall pay to Lender each month a sum equal to one-twelfth of the yearly mortgage insurance premium being paid by Borrower when the insurance coverage lapsed or ceased to be in effect. Lender will accept, use and retain these payments as a loss reserve in lieu of mortgage insurance. Loss reserve payments may no longer be required, at the option of Lender, if mortgage insurance coverage (in the amount and for the period that Lender requires) provided by an insurer approved by Lender again becomes available and is obtained. Borrower shall pay the premiums required to maintain mortgage insurance in effect, or to provide a loss reserve, until the requirement for mortgage insurance ends in accordance with any written agreement between Borrower and Lender or applicable law.

9. **Inspection.** Lender or its agent may make reasonable entries upon and inspections of the Property. Lender shall give Borrower notice at the time of or prior to an inspection specifying reasonable cause for the inspection.

10. **Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender.

In the event of a total taking of the Property, the proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. In the event of a partial taking of the Property in which the fair market value of the Property immediately before the taking is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the taking, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the taking, divided by (b) the fair market value of the Property immediately before the taking. Any balance shall be paid to Borrower. In the event of a partial taking of the Property in which the fair market value of the Property immediately before the taking is less than the amount of the sums secured immediately before the taking, unless Borrower and Lender otherwise agree in writing or unless applicable law otherwise provides, the proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the condemnor offers to make an award or settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the proceeds, at its option, either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of such payments.

11. **Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successors in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

12. **Successors and Assigns Bound; Joint and Several Liability; Co-signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 17. Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument, (b) is not personally obligated to pay the sums secured by this Security Instrument, and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

13. **Loan Charges.** If the loan secured by this Security Instrument is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge under the Note.

14. **Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to

5

R1999150862

Lender's address stated herein or any other address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

**15. Governing Law; Severability.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

**16. Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

**17. Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**18. Borrower's Right to Reinstate.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earlier of: (a) 5 days (or such other period as applicable law may specify for reinstatement) before sale of the Property pursuant to any power of sale contained in this Security Instrument; or (b) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees; and (d) takes such action as Lender may reasonably require to assure that the lien of this Security Instrument, Lender's rights in the Property and Borrower's obligation to pay the sums secured by this Security Instrument shall continue unchanged. Upon reinstatement by Borrower, this Security Instrument and the obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under paragraph 17.

**19. Sale of Note; Change of Loan Servicer.** The Note or a partial interest in the Note (together with this Security Instrument) may be sold one or more times without prior notice to Borrower. A sale may result in a change in the entity (known as the "Loan Servicer") that collects monthly payments due under the Note and this Security Instrument. There also may be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change in accordance with paragraph 14 above and applicable law. The notice will state the name and address of the new Loan Servicer and the address to which payments should be made. The notice will also contain any other information required by applicable law.

**20. Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 20, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 20, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**21. Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under paragraph 17 unless

Form 3014 9/90

6

R1999150862

applicable law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure. If the default is not cured on or before the date specified in the notice, Lender, at its option, may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 21, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

22. Release. Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument without charge to Borrower. Borrower shall pay any recordation costs.

23. Waiver of Homestead. Borrower waives all right of homestead exemption in the Property.

24. Riders to this Security Instrument. If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants and agreements of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument. [Check applicable box(es)]

- [ ] Adjustable Rate Rider
- [ ] Graduated Payment Rider
- [ ] Balloon Rider
- [x] VA Rider

- [ ] Condominium Rider
- [ ] Planned Unit Development Rider
- [ ] Rate Improvement Rider
- [ ] Other(s) [specify]

- [ ] 1-4 Family Rider
- [ ] Biweekly Payment Rider
- [ ] Second Home Rider

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

Witnesses:

_Lillian M. Carroll_
LILLIAN M. CARROLL - SIGNING FOR THE SOLE PURPOSE OF WAIVING HOMESTEAD RIGHTS

_James H. Carroll_ (Seal)
JAMES H. CARROLL — Borrower

_____ (Seal)
— Borrower

_____ (Seal)
— Borrower

_____ (Seal)
— Borrower

STATE OF ILLINOIS, WILL County ss:

I, _the undersigned_, a Notary Public in and for said county and state do hereby certify that JAMES H. CARROLL and Lillian M Carroll, personally known to me to be the same person(s) whose name(s) subscribed to the foregoing instrument, appeared before me this day in person, and acknowledged that THEY signed and delivered the said instrument as THEIR free and voluntary act, for the uses and purposes therein set forth.

Given under my hand and official seal, this 8th day of December, 1999.

My Commission Expires:

"OFFICIAL SEAL"
CHRISTINE M. CLARK
Notary Public, State of Illinois
My Commission Expires 8/13/2002

_Christine M. Clark_
Notary Public

6V(IL) (9502).01   Form 3014 9/90

7

R1999150863

**EXHIBIT C**

FATIC# AW4942

MARY ANN STUKEL 2)
Will County Recorder
Will County

R 99150863  Page 1 of 2
L&K Date 12/10/1999  Time 11:28:41
Recording Fees: 15.00

12-10-99

Parcel Number
06-16-219-022

Mail To

This form was prepared by CROSSLAND MORTGAGE CORP.  address.
1520 KENSINGTON RD SUITE 335 OAKBROOK IL 60523  tel no 630 573-1800
Loan ID 0020211967

## ASSIGNMENT OF MORTGAGE

For Value Received, the undersigned holder of a Mortgage (herein "Assignor") whose address is
7601 W 191ST STREET, 2ND FLOOR TINLEY PARK, IL 60477
does hereby grant, sell, assign, transfer and convey, unto the
CrossLand Mortgage Corp
a corporation organized and existing under the laws of  the State of Utah  (herein "Assignee")
whose address is 3902 S State Street, Salt Lake City, UT 84107
a certain Mortgage dated December 8, 1999  , made and executed by
JAMES H. CARROLL, MARRIED TO LILLIAN M. CARROLL

TO

to and in favor of  JC MARSHALL FINANCIAL SVCS INC  upon the following described
property situated in  WILL  County, State of Illinois

SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE PART OF

such Mortgage having been given to secure payment of  One Hundred Seven Thousand One Hundred
and no/100---  ($ 107,100.00  )
(Include the Original Principal Amount) Concurrently Herewith
which Mortgage is of record in Book, Volume, or Liber No.  , at page  (or as No
R99-150862 ) of the  Records of WILL  County,
State of Illinois, together with the note(s) and obligations therein described and the money due and to become due thereon with
interest, and all rights accrued or to accrue under such Mortgage

Illinois Assignment of Mortgage  12/96
9951R1.9112
VMP MORTGAGE FORMS 1800-521-7291
Page 1 of 2

182 (3)


EXHIBIT C

R1999150863

TO HAVE AND TO HOLD the same unto Assignee, its successor and assigns, forever, subject only to the terms and conditions of the above-described Mortgage.
IN WITNESS WHEREOF, the undersigned Assignor has executed this Assignment of Mortgage on /3-8-?

Witness: BONNIE GAFFNEY

Witness: LAURA CORBO

JC MARSHALL FINANCIAL SVCS INC
(Assignor)

By: JOSEPH C. MARSHALL (Signature) PRESIDENT

Seal:
"OFFICIAL SEAL"
KAREN L. MINERVINI
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES 1/6/2001

State of ILLINOIS
County of COOK

This instrument was acknowledged before me on
by JOSEPH C. MARSHALL, PRESIDENT

as                                                      of JC MARSHALL FINANCIAL SVCS INC

KAREN L. MINERVINI

Page 2 of 2

2

Description: Will,IL Document-Year.DocID 1999.150863 Page: 2 of 2
Order: 332 Comment:

**EXHIBIT C**

R2000025863

When recorded return to:
Nationwide Title Clearing
101 N. Brand #1800
Glendale, CA 91203

CMC#: 20211967
CMXC: 1956607168
INV/Pool: CNMA 512306

MARY ANN STUKEL
Will County Recorder
Will County

R 2000025863          Page 1 of 1
KMB Date 03/10/2000    Time 14:48:37
Recording Fees /              16.00

3-10-2000

## ASSIGNMENT OF MORTGAGE/DEED

FOR GOOD AND VALUABLE CONSIDERATION,
the sufficiency of which is hereby acknowledged, the undersigned,
CROSSLAND MORTGAGE CORP., a Utah Corporation, whose address
is 3907 South State St., Salt Lake City, UT 84107 (assignor),
by these presents does convey, grant, sell, assign, transfer and set
over the described mortgage/deed of trust together with the certain
note(s) described therein together with all interest secured thereby,
all liens, and any rights due or to become due thereon to
CHASE MANHATTAN MORTGAGE CORPORATION, a New Jersey Corporation,
whose address is 343 Thornall Street, Edison New Jersey, 08837,
its successors or assigns (assignee)
Said mortgage/deed of trust bearing the date 12/08/99, made by
JAMES R CARROLL AND LILLIAN M CARROLL
to J C MARSHALL FINANCIAL SERVICES INC.
and recorded in the Recorder or Registrar of Titles of WILL
County, Illinois in Book n/a Page n/a as Instr# R1999150862
upon the property situated in said State and County as more fully
described in said mortgage or herein to wit:
known as 721 COTTAGE ST
02/03/00      SHOREWOOD, IL 60431              06-16-719-022
CROSSLAND MORTGAGE CORP.

By: _____
Elsa McKinnon                    Vice President

STATE OF CALIFORNIA          COUNTY OF LOS ANGELES
The foregoing instrument was acknowledged before me
this 3rd day of February, 2000 , by Elsa McKinnon
of CROSSLAND MORTGAGE CORP.
on behalf of said CORPORATION.

JIM BEASLEY
COMM # 1209431
NOTARY PUBLIC CALIFORNIA
LOS ANGELES COUNTY
COMM EXP FEB 26, 2003

Jim Beasley                      Notary Public
My commission expires 02/26/2003
Prepared by D Colon/NTC 101 N. Brand #1800, Glendale, CA 91203 (800)346-
CRS52 WB   3673W

171
(4)

JS 44
(Rev. 07/89)

# CIVIL COVER SHEET

50619

02C 3805
JUDGE LINDBERG
MAGISTRATE JUDGE NOLAN

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I (a) PLAINTIFFS
CHASE MANHATTAN MORTGAGE CORPORATION

## DEFENDANTS
JAMES CARROLL, ET. AL

(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF: FRANKLIN
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT: WILL
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)
Fisher & Fisher, Attorneys At Law, PC
120 North LaSalle, Ste. 2520
Chicago, IL 60602
312-372-4784

ATTORNEYS (IF KNOWN)

DOCKETED MAY 29 2002

## II. BASIS OF JURISDICTION (PLACE AN x IN ONE BOX ONLY)
- ☐ 1 U.S. Government Plaintiff
- ☐ 2 U.S. Government Defendant
- ☐ 3 Federal Question (U.S. Government Not a Party)
- ☒ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT)
(For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☒ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☒ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE. DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY)

MORTGAGE FORECLOSURE - 28 U.S. 1332

## V. NATURE OF SUIT (PLACE AN x IN ONE BOX ONLY)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury—Med Malpractice | ☐ 620 Other Food & Drug | | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury—Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 423 Withdrawal 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce/ICC Rates/ |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **LABOR** | ☐ 861 HIA (1395ff) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 862 Black Lung (923) | ☐ 891 Agricultural Acts |
| ☐ 195 Contract Product Liability | | | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | ☐ 892 Economic Stabilization Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act | ☐ 864 SSID Title XVI | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence Habeas Corpus: | | ☐ 865 RSI (405(g)) | ☐ 894 Energy Allocation Act |
| ☒ 220 Foreclosure | ☐ 442 Employment | | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/Accommodations | ☐ 530 General | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 440 Other Civil Rights | ☐ 540 Mandamus & Other | | | ☐ 890 Other Statutory Actions |
| ☐ 290 All Other Real Property | | ☐ 550 Civil Rights | | | |

## VI. ORIGIN (PLACE AN x IN ONE BOX ONLY)
- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

## VII. REQUESTED IN COMPLAINT:
CHECK IF THIS IS A CLASS ACTION
☐ UNDER F.R.C.P. 23
DEMAND $ $105,483.85
Check YES only if demanded in complaint:
JURY DEMAND: ☐ YES ☐ NO

## VIII. REMARKS
In response to ☐ is not a refiling of a previously dismissed action
General Rule 2.21D(2) this case ☐ is a refiling of case number _____ of Judge _____

DATE: MAY 29 2002
SIGNATURE OF ATTORNEY OF RECORD

UNITED STATES DISTRICT COURT

50619

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### Eastern Division

DOCKETED
MAY 29 2002

In the Matter of
CHASE MANHATTAN MORTGAGE CORPORATION
-vs-
JAMES CAROLL, ET. AL

Case Number:

APPEARANCES ARE HEREBY FILED BY THE UNDERSIGNED AS ATTORNEY(S) FOR:
CHASE MANHATTAN MORTGAGE CORPORATION

| (A) | (B) |
|---|---|
| SIGNATURE | SIGNATURE |
| NAME: Erik E. Blumberg | NAME: Marc D. Engel |
| FIRM: Fisher and Fisher | FIRM: Fisher and Fisher |
| STREET ADDRESS: 120 N. LaSalle St., Suite 2520 | STREET ADDRESS: 120 N. LaSalle St., Suite 2520 |
| CITY/STATE/ZIP: Chicago, IL 60602 | CITY/STATE/ZIP: Chicago, IL 60602 |
| TELEPHONE NUMBER: 312-372-4784 | TELEPHONE NUMBER: 312-372-4784 |
| IDENTIFICATION NUMBER: 6226628 | IDENTIFICATION NUMBER: 6255891 |
| MEMBER OF TRIAL BAR? YES ☐ NO ☒ | MEMBER OF TRIAL BAR? YES ☐ NO ☒ |
| TRIAL ATTORNEY? YES ☒ NO ☐ | TRIAL ATTORNEY? YES ☒ NO ☐ |
|  | DESIGNATED AS LOCAL COUNSEL? YES ☐ NO ☐ |
| **(C)** | **(D)** |
| SIGNATURE | SIGNATURE |
| NAME: THOMAS J. DONAHUE | NAME: Kenneth J. Johnson |
| FIRM: FISHER AND FISHER | FIRM: Fisher and Fisher |
| STREET ADDRESS: 120 N. LASALLE, SUITE 2520 | STREET ADDRESS: 120 N. LaSalle St., Suite 2520 |
| CITY/STATE/ZIP: CHICAGO, IL 60602 | CITY/STATE/ZIP: Chicago, IL 60602 |
| TELEPHONE NUMBER: 312-372-4784 | TELEPHONE NUMBER: 312-372-4784 |
| IDENTIFICATION NUMBER: 6201082 | IDENTIFICATION NUMBER: 90785090 |
| MEMBER OF TRIAL BAR? YES ☐ NO ☒ | MEMBER OF TRIAL BAR? YES ☐ NO ☒ |
| TRIAL ATTORNEY? YES ☒ NO ☐ | TRIAL ATTORNEY? YES ☒ NO ☐ |
| DESIGNATED AS LOCAL COUNSEL? YES ☐ NO ☐ | DESIGNATED AS LOCAL COUNSEL? YES ☐ NO ☐ |

PLEASE COMPLETE IN ACCORDANCE WITH INSTRUCTIONS ON REVERSE.

1-3

Case: 1:02-cv-03805 Document #: 1 Filed: 05/29/02 Page 19 of 20 PageID #:19

50619

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION



DOCKETED
MAY 29 2002

In the Matter of
CHASE MANHATTAN MORTGAGE CORPORATION
-VS-
JAMES CARROLL, ET. AL

Case Number **02C 3805**

JUDGE LINDBERG

APPEARANCES ARE HEREBY FILED BY THE UNDERSIGNED AS ATTORNEY(S) FOR

CHASE MANHATTAN MORTGAGE CORPORATION

---

**(A)**
- SIGNATURE
- NAME: Elizabeth Kaplan Meyers
- FIRM: Fisher and Fisher
- STREET ADDRESS: 120 N. LaSalle St., Ste. 2520
- CITY/STATE/ZIP: Chicago, IL 60602
- TELEPHONE NUMBER: 312-372-4784
- IDENTIFICATION NUMBER: 06196562
- MEMBER OF TRIAL BAR? YES ☐ NO ☒
- TRIAL ATTORNEY? YES ☒ NO ☐

**(B)**
- SIGNATURE
- NAME: Renee Meltzer Kalman
- FIRM: Fisher and Fisher
- STREET ADDRESS: 120 N. LaSalle St., Ste. 2520
- CITY/STATE/ZIP: Chicago, IL 60602
- TELEPHONE NUMBER: 312-372-4784
- IDENTIFICATION NUMBER: 06198331
- MEMBER OF TRIAL BAR? YES ☐ NO ☒
- TRIAL ATTORNEY? YES ☒ NO ☐
- DESIGNATED AS LOCAL COUNSEL? YES ☐ NO ☐

**(C)**
- SIGNATURE
- NAME: Michael S. Fisher
- FIRM: Fisher and Fisher
- STREET ADDRESS: 120 N. LaSalle St., Ste. 2520
- CITY/STATE/ZIP: Chicago, IL 60602
- TELEPHONE NUMBER: 312-372-4784
- IDENTIFICATION NUMBER: 06216064
- MEMBER OF TRIAL BAR? YES ☐ NO ☒
- TRIAL ATTORNEY? YES ☒ NO ☐
- DESIGNATED AS LOCAL COUNSEL? YES ☐ NO ☐

**(D)**
- SIGNATURE
- NAME: RYAN KRUEGER
- FIRM: FISHER AND FISHER
- STREET ADDRESS: 120 N. LASALLE ST., STE. 2520
- CITY/STATE/ZIP: CHICAGO, IL 60602
- TELEPHONE NUMBER: 312-372-4784
- IDENTIFICATION NUMBER: 6237486
- MEMBER OF TRIAL BAR? YES ☐ NO ☒
- TRIAL ATTORNEY? YES ☒ NO ☐
- DESIGNATED AS LOCAL COUNSEL? YES ☐ NO ☐

PLEASE COMPLETE IN ACCORDANCE WITH INSTRUCTIONS ON REVERSE.

50619

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### Eastern Division



DOCKETED
MAY 29 2002

In the Matter of
CHASE MANHATTAN MORTGAGE CORPORATION
-VS-
JAMES CAROLL, ET. AL

Case Number: 02C 

JUDGE LINDBERG

APPEARANCES ARE HEREBY FILED BY THE UNDERSIGNED AS ATTORNEY(S) FOR:
CHASE MANHATTAN MORTGAGE CORPORATION

MAGISTRATE JUDGE

| (A) | (B) |
|---|---|
| SIGNATURE | SIGNATURE |
| NAME ALYCIA A. FITZ | NAME |
| FIRM Fisher and Fisher | FIRM |
| STREET ADDRESS 120 N. LaSalle St., Suite 2520 | STREET ADDRESS |
| CITY/STATE/ZIP Chicago, IL 60602 | CITY/STATE/ZIP |
| TELEPHONE NUMBER 312-372-4784 | TELEPHONE NUMBER |
| IDENTIFICATION NUMBER 6269747 | IDENTIFICATION NUMBER |
| MEMBER OF TRIAL BAR? YES ☐ NO ☒ | MEMBER OF TRIAL BAR? YES ☐ NO ☒ |
| TRIAL ATTORNEY? YES ☒ NO ☐ | TRIAL ATTORNEY? YES ☒ NO ☐ |
|  | DESIGNATED AS LOCAL COUNSEL? YES ☐ NO ☐ |

| (C) | (D) |
|---|---|
| SIGNATURE | SIGNATURE |
| NAME | NAME |
| FIRM | FIRM |
| STREET ADDRESS | STREET ADDRESS |
| CITY/STATE/ZIP | CITY/STATE/ZIP |
| TELEPHONE NUMBER | TELEPHONE NUMBER |
| IDENTIFICATION NUMBER | IDENTIFICATION NUMBER |
| MEMBER OF TRIAL BAR? YES ☐ NO ☒ | MEMBER OF TRIAL BAR? YES ☐ NO ☒ |
| TRIAL ATTORNEY? YES ☒ NO ☐ | TRIAL ATTORNEY? YES ☒ NO ☐ |
| DESIGNATED AS LOCAL COUNSEL? YES ☐ NO ☐ | DESIGNATED AS LOCAL COUNSEL? YES ☐ NO ☐ |

PLEASE COMPLETE IN ACCORDANCE WITH INSTRUCTIONS ON REVERSE.